# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-1260

DENISE MATTHEWS

VERSUS

LOUISIANA HOME BUILDER'S ASSOCIATION
SELF INSURER'S FUND, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF ACADIA, NO. 13-01946
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of J. David Painter, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED.**

Stephen E. Broyles
Glusman, Broyles & Glusman, LLC
Post Office Box 2711
Baton Rouge, Louisiana 70821
(225) 387-5551
Counsel for Defendants/Appellees:
    Louisiana Home Builder's Association Self Insurer's Fund
    Oakheart Farms, Inc.

Mark L. Riley
The Glenn Armentor Law Corporation
300 Stewart Street
Lafayette, Louisiana 70501
(337) 233-1471
Counsel for Plaintiff/Appellant:
    Denise Matthews

**KEATY, Judge.**

In this workers' compensation case, the claimant, Denise Matthews, appeals a judgment rendered by the Workers' Compensation Judge (WCJ) upholding the decision of the Medical Director of the Office of Workers' Compensation (the Medical Director) to deny requests from Matthews' treating physician seeking authorization for MRIs of her cervical spine and right shoulder and an EMG/NCS of the cervical and bilateral upper extremities. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Matthews sustained an on-the-job injury on July 17, 2012, while employed at Oakheart Farms, Inc., when she slipped and fell while stepping off a skid ladder. On September 13, 2012, Matthews' treating physician, Dr. Michel Heard, an orthopedist, filed a Form 1009 Disputed Claim for Medical Treatment, seeking the Medical Director's approval of a cervical MRI and a right shoulder MRI that had been denied by Novare, Matthews' employer's workers' compensation carrier. The Medical Director denied the requested services in a Medical Guidelines Dispute Decision (MGD) dated September 26, 2012,[1] on the grounds that the documentation submitted with the request

> **does not** support the approval of the requested services per the Louisiana Medical Treatment Guidelines (MTG) noted below.[2] The clinical records do not include a thorough neuromuscular history and physical exam of the cervical spine and shoulder to warrant testing approval. No specific written limitations of return to work have been noted.

---

[1] *See* MGD-1848.

[2] The Louisiana Medical Treatment Guidelines will hereafter be referred to as "the Guidelines." The Guidelines are found in Title 40 of the Louisiana Administrative Code.

The Medical Director explained that the emphasis of the Guidelines "is to move patients along a continuum of care and return-to-work within a six-month time frame, whenever possible." He further explained that "[c]linical information obtained by history taking and physical examination should form the basis for selecting an imaging procedure and interpreting its results." Thereafter, the Medical Director listed the specific provisions of the Guidelines that he applied in rendering his decision, which consisted of Section 2319 of Chapter 23 relative to shoulder injuries and Sections 2003, 2005, and 2007 of Chapter 20 relative to cervical spine injuries. Finally, the Medical Director explained that an aggrieved party could appeal his decision by filing a Form 1008 Disputed Claim for Compensation.

Dr. Heard filed a second Form 1009 on January 15, 2013, seeking the Medical Director's approval of a cervical MRI and a right shoulder MRI that had been denied a second time by Novare. The Medical Director again denied the requested services in a MGD dated January 26, 2013.[3] As before, the rational for the denial was that the documentation submitted "does not support the approval of the requested services per the Louisiana Medical Treatment Guidelines (MTG)." The denial further provided:

> No therapy records are submitted. Electro-diagnostic report dated 11.20.2012 was normal for the upper extremities. Clinical records for an objective shoulder examination note only decreased measurements for ROM; for the cervical area records note decrease ROM and normal motor, sensory and reflex exam.
>
> All the published MTG note that "Clinical information obtained by history taking and physical examination should form the basis for selecting an imaging procedure and interpreting its results." Previous MGD-1848 was denied due to no comprehensive exam being performed. That concern has not been improved. Additionally, the

---

[3] *See* MGD-2832.

limited cervical neurologic exam performed is normal, as well as the normal electro-diagnostic study results.

Again, the Medical Director listed the specific provisions of the Guidelines that he applied in rendering his decision, which, this time, consisted of Sections 2317, 2319, 2321, and 2323 of Chapter 23 relative to shoulder injuries and Sections 2003, 2005, and 2007 of Chapter 20 relative to cervical spine injuries.

Dr. Heard filed a third Form 1009 on February 20, 2013, attaching forty pages of documentation, seeking the Medical Director's approval of an EMG/NCS of the cervical and bilateral upper extremities, a cervical MRI, and a right shoulder MRI that had again been denied by Novare. The Medical Director denied the requested services for the third time in a decision dated February 21, 2013.[4] As before, the rational for the denial was that the documentation submitted "does not support the approval of the requested services per the Louisiana Medical Treatment Guidelines (MTG)." The denial further noted that "Appeal of a Form 1009 decision is through the 1008 process, not repetitive filing of Form 1010 and 1009. See prior MGD for further review."

Matthews filed a Form 1008 on March 12, 2013, seeking an "[a]ppeal from 1009 denial," along with penalties and fees. She alleged therein that she injured her neck and right shoulder in the accident. Oakheart and its insurer, Louisiana Home Builder's Association Self Insurer's Fund (hereafter collectively referred to as Defendants), answered the 1008 admitting that Matthews "sustained a compensable accident arising out of and in the course and scope of her employment with Oakheart" but "aver[ing] that the injuries were limited to her right hand." Defendants denied that Matthews sustained a disabling injury as a

---

[4] *See* MGD-3053.

result of the accident and contended that she was not currently temporarily disabled, permanently disabled, nor suffering from a loss of earning capacity. Defendants asserted that because the treatment recommended by Dr. Heard was not owed under the MTG, the decision of the Medical Director should be affirmed and that Matthews' claim for penalties and attorney fees should be denied.[5]

The matter came for hearing on June 14, 2013.[6] On July 2, 2013, the WCJ rendered judgment in open court denying and dismissing with prejudice Matthews' appeal of the Medical Director's decisions of September 26, 2012 in MGD-1848, January 26, 2013 in MGD-2832, and February 21, 2013 in MGD-3053. Matthews now appeals, asserting as her sole assignment of error the following, "The Trial Court erred in its assessment and review of the Medical Director and therefore erred in refusing to overrule the Director."

## DISCUSSION

Louisiana Revised Statutes 23:1203.1 was enacted by the legislature in 2009 to provide for the establishment of a medical treatment schedule, and such a schedule was promulgated by the Louisiana Workforce Commission, Office of Workers' Compensation Administration in June 2011. As a result, "medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule." La.R.S. 23:1203.1(I). Section 1203.1 establishes a

---

[5] Defendants' answer included a reconventional demand to which Matthews filed various exceptions. Defendants also sought to dismiss Matthews' appeal as untimely and to suspend benefits pending Matthews' return of properly executed Form 1020 Employee's Monthly Report of Earnings. After a hearing, the WCJ denied Matthews' exceptions as well as Defendants' motion to dismiss appeal. Defendants' request that Matthews' benefits be suspended was also denied, and Matthews was ordered to submit a Form 1020 within fifteen days. None of those motions or exceptions are at issue in this appeal.

[6] The record does not contain a transcript of the June 14, 2013 hearing.

procedure whereby an injured employee's medical provider can request authorization for medical services from a payor, usually the employer or its insurer, who must act on that request within five days. La.R.S. 23:1203.1(J)(1). Thereafter, any aggrieved party has fifteen days within which to file an appeal with the Medical Director who must render a decision within thirty days. *Id.* "After the issuance of the decision by the medical director. . ., any party who disagrees with the decision, may then appeal by filing a 'Disputed Claim for Compensation.'" La.R.S. 23:1203.1(K). A decision of the Medical Director "may be overturned when it is shown, by clear and convincing evidence, the decision . . . was not in accordance with the provisions of this Section." *Id.*; *See also Usie v. Lafayette Parish Sch. Sys.*, 13-294 (La.App. 3 Cir. 10/9/13), 123 So.3d 885.

Dr. Heard's initial Form 1009 contained a report from his initial visit with Matthews on August 14, 2012, wherein he prescribed conservative treatment for Matthews' injuries, including medication and physical therapy, and he recommended that she undergo MRIs of her right shoulder and cervical spine. After his second visit with Matthews on September 6, 2012, Dr. Heard again recommended the two MRIs without waiting to see the results of the conservative treatment. When the Medical Director denied the requested testing in MGD-1848, he explained that "a thorough neuromuscular history and physical exams of both the cervical spine and shoulder" were needed in order to get the MRIs approved. The Medical Director then listed the portions of the Guidelines outlining the initial diagnostic procedures for injuries to the shoulder and spine, including the specific clinical tests that a physician could use to make a diagnosis.

In addition to his office reports dated August 14 and September 6, 2012, the second Form 1009 submitted by Dr. Heard on January 15, 2013, contained a copy

5

of the patient history that Matthews gave on her first visit with him, along with reports from Matthews' later visits with Dr. Heard dated August 28, 2012, September 18, 2012, October 2, 2012, October 16, 2012, November 13, 2012, November 26, 2012, December 11, 2012, and January 2, 2013. According to the November 26, 2012 report, Dr. Heard had consulted with a vocational rehabilitation counselor on that date to review Matthews' records as well as Dr. Heard's current and recommended treatment. The second Form 1009 also included a procedure report dated December 19, 2012, documenting that Dr. Heard had injected Matthews' right acromioclavicular joint with Lidocaine resulting in a decrease in her pain in that area from ten out of ten to four out of ten on a scale of ten, with ten being the highest. It also included the results of EMG and nerve conduction studies done by Dr. James Domingue of Matthews' right arm wherein he stated that the study was "normal without clear-cut electrophysiological evidence of radiculopathy or peripheral nerve entrapment." No physical therapy records are included, and there is no indication that Dr. Heard conducted a more comprehensive examination of Matthews' cervical spine and shoulder or that he had performed any additional tests of those areas, in contravention of the recommendation found in Chapters 20 and 23 of the Guidelines.

When Dr. Heard filed a third Form 1009 on February 20, 2013, the only documentation that he submitted in addition to that previously submitted in the second Form 1009 was an office report from his January 29, 2013 visit with Matthews which failed to address the primary concerns noted in the Medical Director's first two denials. As mentioned previously, this Form 1009 sought approval of an EMG/NCS of the cervical and bilateral upper extremities in addition to the MRIs contained in the previous two Form 1009s. Upon review, the

Medical Director again denied the requested tests, referencing its prior MGD and again explaining that the proper mechanism for appealing a Form 1009 decision is by filing a Form 1008.

After having carefully reviewed the record in its entirety, we conclude that Matthews failed to show by clear and convincing evidence that the decisions of the Medical Director were not in accordance with La.R.S. 23:1203.1. Rather than supplementing his initial Form 1009 to comply with the explicit provisions of the Guidelines regarding what testing had to be done and what documentation had to be submitted to garner approval of the requested medical treatment, Dr. Heard filed duplicative Form 1009s without heeding the Medical Director's advice to first document the results of the conservative treatment that he had initially recommended to Matthews. While we realize that the Guidelines provide that MRIs are useful tools in the diagnosis of injuries to the cervical spine and shoulder, La.R.S. 23:1203.1(I) provides that medical care and treatment must be "in accordance with the medical treatment schedule." Because none of the Form 1009s submitted by Dr. Heard complied with the dictates prescribed by the Guidelines, Matthews did not meet her burden of proof under La.R.S. 23:1203.1(K). Accordingly, the judgment of the WCJ is affirmed.

**DECREE**

For the foregoing reasons, the judgment rendered by the Workers' Compensation Judge upholding the decision of the Medical Director of the Office of Workers' Compensation to deny requests from Denise Matthews' treating physician seeking authorization for MRIs of her cervical spine and right shoulder and an EMG/NCS of the cervical and bilateral upper extremities is affirmed. All costs of this appeal are assessed against Denise Matthews.

**AFFIRMED.**

7