# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 20-218

MUSSON PATOUT AUTOMOTIVE GROUP

VERSUS

JIMMY MAYNARD

**Consolidated with**

**20-219**

JIMMY MAYNARD

VERSUS

MUSSON PATOUT AUTOMOTIVE GROUP

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT NO. 4
PARISH OF LAFAYETTE, NO. 18-08513 C/W 19-00336
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED AS AMENDED.**

Timothy E. Benedetto
Workers' Compensation, L.L.C.
3045 Ridgelake Drive, Suite 203
Metairie, LA 70002
(504) 838-8883
COUNSEL FOR DEFENDANT/PLAINTIFF/APPELLANT:
 Jimmy Maynard

Corey M. Meaux
Allen & Gooch, A Law Corporation
P. O. Box 81129
Lafayette, LA 70598-1129
(337) 291-1630
COUNSEL FOR PLAINTIFF/DEFENDANT/APPELLEE:
 Musson Patout Automotive Group

**KYZAR, Judge.**

The employee, Jimmy Maynard, appeals from a workers' compensation judgment awarding him penalties and attorney fees based on the employer's failure to timely authorize surgery. For the reasons herein, we affirm as amended.

## DISCUSSION OF THE RECORD

Mr. Maynard, an employee of Musson Patout Automotive Group, Inc. (Musson Patout), was injured while in the course and scope of his employment as a result of a June 12, 2018 motor vehicle accident. Musson Patout commenced paying him indemnity benefits as a result of this accident. Mr. Maynard was diagnosed by Dr. John B. Sledge, III, an orthopedic surgeon, with other spondylosis, other cervical disc degeneration, spinal stenosis, and radiculopathy in the cervical region; other spondylosis with radiculopathy, intervertebral disc disorders with radiculopathy, and other intervertebral disc displacement in the lumbar region, as well as low back pain.

Based on Mr. Maynard's failure to respond to conservative treatment, Dr. Sledge submitted an LWC Form 1010 on October 4, 2018, requesting authorization from Risk Management Services, LLC (Risk Management), Musson Patout's third party administrator, to perform a transforaminal lumbar interbody fusion, consisting of a two-level lumbar decompression and fusion at L3-4 and L4-5. However, Risk Management's utilization reviewer, Novare Utilization Review (Novare), denied authorization for the surgery on October 11, 2018, finding that it was not in accordance with the Medical Treatment Schedule or La.R.S. 23:1203.1(D) because Mr. Maynard had not undergone a pre-surgical psychological evaluation. In response to this denial, Dr. Sledge requested authorization for Mr. Maynard to undergo a psychological evaluation in accordance with the Medical Treatment Guidelines, which was approved by Novare on October 25, 2018.

On October 24, 2018, Mr. Maynard underwent a second medical opinion (SMO) evaluation by Dr. Thad S. Broussard, an orthopedic surgeon, at the request of Risk Management. Dr. Broussard related Mr. Maynard's symptoms to his June 12, 2018 accident and stated that the treatment received by him was "reasonable, appropriate and necessary." He stated that Mr. Maynard had not yet reached maximum medical improvement, estimating that this would not occur until at least six months post-accident. However, Dr. Broussard opined that Mr. Maynard was not a candidate for surgery because his pain was controllable with medication and because there was no documented objective evidence of radiculopathy. He further stated that he felt that Mr. Maynard could return to work and that any question regarding his ability to work could be addressed through a functional capacity evaluation.

After Mr. Maynard was cleared psychologically for surgery by Dr. Jean Boudreaux, a licensed psychologist, Dr. Sledge resubmitted the request for surgery on December 10, 2018, which was approved with modifications by Novare on December 13, 2018. However, that same day, Danielle Rogers, Risk Management's claims adjuster, denied authorization, stating that the "Previous approval is now rescinded. Pending conference with treating physician."[1]

On December 19, 2018, Musson Patout filed a disputed claim for compensation (Docket Number 18-08513) in the Office of Workers' Compensation, District 09, which included a motion for a court-appointed independent medical examination (IME). Because of Dr. Sledge's and Dr. Broussard's conflicting medical opinions, Musson Patout asked that a physician be appointed to evaluate Mr. Maynard in order to address the following questions:

---

[1] Although Ms. Rogers was scheduled to meet with Dr. Sledge on January 28, 2019, that meeting was canceled on January 22, 2019, after Musson Patout filed its IME request.

2

- What is claimant's current work status as it pertains to the alleged work-related incident?

Specifically:

a) Can claimant return to work at this time?

b) If so, does claimant have any restrictions, including daily hour limitations?

c) If any restrictions are applicable, please state all restrictions?

d) What capacity or level of duty is claimant able to work?

- What is claimant's current medical condition?

- Is claimant's current medical condition indicative of the need for additional medical treatment, including surgical intervention?

In addition to opposing Musson Patout's motion on January 10, 2019, Mr. Maynard filed a disputed claim for compensation (Docket Number 19-00336) in the Office of Workers' Compensation, District 04, alleging that the following bona fide disputes with Musson Patout: incorrect workers' compensation rate; failure to authorize medical treatment recommended by Dr. Sledge; disability status, temporary total disability; and all other equitable relief owed, including penalties and attorney fees, reimbursement of costs, and judicial interest. That same day, Mr. Maynard moved to transfer venue in Docket Number 18-08513 to District 04 in Lafayette Parish, the parish of his domicile. An order granting the motion was rendered by the WCJ on February 21, 2019.

On March 6, 2018, in Docket Number 19-00336, the parties entered into a consent judgment, finding that Mr. Maynard's accident occurred in the course and scope of his employment with Musson Patout; that Musson Patout had miscalculated Mr. Maynard's average weekly wage (AWW) and workers' compensation rate, that the correct rates were $541.62 and $361.08, respectively, and that Musson Patout

3

owed Mr. Maynard $2,000.00 in penalties for the miscalculation; that all other issues were reserved for trial; that Mr. Maynard's entitlement to future indemnity benefits would be governed by the Workers' Compensation Act; and that Risk Management, as Musson Patout's third party administrator, was not a defendant in the litigation.

On March 8, 2019, in Docket Number 18-08516, Musson Patout filed a motion to consolidate the two workers' compensation claims under that docket number, which was granted on March 11, 2019. On April 24, 2019, the WCJ issued an order that Mr. Maynard submit to an IME by Dr. Thomas Butaud on June 5, 2019. The Office of Workers' Compensation Administration's letter of that same date to Dr. Butaud specified that he was to address Mr. Maynard's ability to return to work.

Following the examination, Dr. Butaud issued a report, finding that Mr. Maynard's cervical issues had resolved but that he had significant degenerative changes in his lumbar spine, especially at L3-4 and L4-5, "with disc pathology to the right at L4-5[.]" However, Dr. Butaud felt that because Mr. Maynard also had degenerative changes in his right hip, it was not clear whether his right leg pain emanated from his lumbar spine or his right hip. Thus, he recommended delaying surgery so that Mr. Maynard could undergo nerve testing and a right-hip injection. Dr. Butaud stated that surgery on Mr. Maynard's lumbar spine would be required if the hip injection failed to provide significant relief. He further stated that Mr. Maynard should not return to work pending further testing and evaluation and that he had not yet reached maximum medical improvement.

On July 22, 2019, Mr. Maynard moved for summary judgment, requesting judgment finding him entitled to the surgery recommended by Dr. Sledge; awarding him temporary total disability benefits from the date of his accident; awarding him $2,000.00 in penalties based on Musson Patout's failure to timely authorize the surgery; awarding him attorney fees based on Musson Patout's miscalculation of his

4

AWW and its failure to timely authorize surgery; and awarding him court costs and judicial interest. Musson Patout opposed the motion. Following a hearing, the WCJ rendered an oral ruling, granting in part and denying in part the motion. The WCJ held that Mr. Maynard was entitled to the requested surgery for the following reasons:

> The portion of the summary judgment requesting surgery should be granted due to the fact that while there is conflicting medical with regards to the surgical recommendation, the medical that conflicts with Medical Director's[2] decision does not contain references to the guidelines. Therefore, the Medical Director's decision has not been attacked in a competent manner, and there has been no showing by clear and convincing evidence that the [M]edical [D]irector's decision was inappropriate.

However, the WCJ held that there were genuine issues of material fact on the issues of Mr. Maynard's entitlement to indemnity benefits and a penalty based on Musson Patout's failure to authorize the surgery. A formal judgment was rendered by the WCJ on September 17, 2019.

Thereafter, the matter proceeded to a trial on the merits. At the November 13, 2019 trial, the parties agreed that the only issues before the WCJ were the amount of attorney fees associated with Musson Patout's miscalculation of the AWW, the award of penalties and attorney fees associated with Musson Patout's failure to timely authorize the surgery, and judicial interests and costs.

The only witness to testify at trial was Peggy Evans, a claims adjuster with Risk Management, who testified that she took the claim over from Ms. Rogers in February or March 2019. Ms. Evans admitted that Novare rendered a modified approval to Dr. Sledge's request for surgery on December 13, 2018, but that Ms. Rogers rescinded the approval pending a rehabilitation conference with Dr. Sledge.

---

[2] Although the WCJ refers to a decision by the Medical Director, which determined that the suggested surgery was medically necessary, the record does not contain such a decision, nor do the appeal briefs reference such a decision. However, because the WCJ mentions a Medical Director decision in his oral rulings on the motion for summary judgment and the trial on the merits, we will presume that there was such a ruling, but that it was not introduced into the record by either party.

She explained that Ms. Rogers rescinded the authorization because Dr. Broussard determined that the surgery was not medically necessary. She further admitted that Ms. Rogers cancelled the rehabilitation conference with Dr. Sledge after Musson Patout filed its disputed claim requesting an IME.

Ms. Evans testified that she did not approve the surgery after she inherited the claim because she had Dr. Broussard's opinion and there was a pending request for an IME. She stated that she did not approve it after she received Dr. Butuad's IME report because it specified that certain other treatment was required before surgery should be approved.

Ms. Evans admitted that medically necessary treatment is determined based on the Medical Treatment Guidelines and that Novare reviewed the requested surgery pursuant to the Medical Treatment Guidelines. However, she agreed that a utilization review company is usually missing medical records, such as an SMO report, when it renders an opinion. In this instance, she testified that she did not believe that Novare had the benefit of Dr. Broussard's October 24, 2018 report when it rendered its December 13, 2018 authorization for the surgery.[3] While she admitted that Novare reviewed Dr. Sledge's request in accordance with the Medical Treatment Guidelines, she could not explain why Novare would need Dr. Broussard's report in order to render a decision. However, Ms. Evans opined that Dr. Broussard also followed the Medical Treatment Guidelines in rendering his opinion and, she would trust his opinion over Novare's because he actually examined Mr. Maynard, unlike Novare, which only reviewed his medical records.

In his December 11, 2019 oral ruling, the WCJ ruled, as follows:

> The issues in this case are in what amount are attorney's fees owed for the miscalculation of the average weekly wage and whether

---

[3] However, Novare's December 13, 2018 modified approval indicates that the medical records it reviewed in reaching its conclusion included Dr. Broussard's October 24, 2018 SMO.

6

penalties and attorney's fees are owed for the failure to approve the surgery recommended by Dr. Sledge.

Dr. Sledge was selected as a choice of orthopedic surgeon for the employee. Dr. Sledge has continued to treat Mr. Maynard since July 30, 2018. He has run numerous tests on the employee, and Dr. Sledge has now submitted a request for authorization requesting surgery. He first submitted this request on October 4, 2018.

The employer denied the surgery as not being medically necessary in accordance with the Medical Treatment Guidelines on the grounds that no presurgical psychological evaluation had been completed. The injured employee then had the presurgical psychological evaluation, after which Dr. Sledge again submitted a 1010 form requesting authorization for the surgery on December 10, 2018. Utilization Review determined the requested surgery was medically necessary in accordance with the Medical Treatment Guidelines.

The employer rescinded the authorization pending a medical evaluation by a second medical opinion physician.[4] The injured employee underwent a second medical opinion with the [employer's] choice of orthopedic surgeon, Dr. Thad Broussard. Dr. Thad Broussard opined that the surgery was not recommended. The injured employee then saw Dr. Butaud for an independent medical examination. Dr. Butaud recommended further conservative treatment. He felt that the injured employee was totally disabled from working but did not recommend surgery at that time.

The issue was whether the employee is entitled to penalties and attorney's fees for the failure to approve the surgery. The Court finds in favor of the employee and awards him a Two Thousand Dollar penalty and Two Thousand Dollars in attorney's fees for the failure to approve the surgery.

The surgery was not approved because the employer was waiting on a second medical opinion and then was waiting on an independent medical examination. However, the parties had already received the Medical Director's opinion that the surgery that was requested fell within the Medical Treatment Guidelines and was approved. Therefore, the employer waiting for the medical opinions of a second medical opinion and an independent medical examination are only relevant if the second medical opinion and the independent medical examination take the treatment guidelines into account when determining the medical necessity for surgery.

---

[4] As previously stated, Novare's December 13, 2018 modified approval indicated that Dr. Broussard's SMO was one of the medical records it reviewed in reaching its decision. Thus, it is safe to assume that Risk Management did not rescind the December 13, 2018 modified approval because it was waiting for Dr. Broussard's opinion.

In this case, [t]he Court does not find that the Medical Treatment Guidelines were referred to by either the second medical opinion or the independent medical examination. Therefore, [t]he Court finds that penalties and attorney's fees in this situation are to be awarded for the failure to approve the surgery.

The employer cannot rely on medical reports to deny the surgery unless the situation is one that involves causation. There has been no allegation that causation is at issue in this case. Therefore, the employer should have approved the surgery based on the Medical Director's finding that the surgery was appropriate within the guidelines and/or should have taken an appeal of the Medical Director's decision. Trying to rely on second medical opinions and independent medical examinations to not approve the surgery is inappropriate in this case, and therefore penalties and attorney's fees are warranted.

A written judgment formalizing the WCJ's oral ruling was rendered on January 9, 2020. The judgment states:

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Employer failed to reasonably controvert and timely authorize the transforaminal lumbar interbody fusion L3-4 and L4-5 recommended by Dr. John Sledge. As a result, the Employer is ordered to pay one two[] thousand dollar ($2,000.00) penalty and one two thousand dollar ($2,000.00) attorney's fee pursuant to La. R.S. 23:1201(F) as a result of the non-authorization/late authorization of the requested surgery.

It is from this judgment that Mr. Maynard instituted this appeal, wherein he assigns the following errors:

1.    The Trial Court committed legal error in granting Defendant/Appellee's *Motion for Court-Appointed Independent Medical Examination* before Claimant/Appellant had reached maximum medical improvement and before undergoing a medically necessary surgery.

2.    The Trial Court committed legal error in partially dismissing Claimant/Appellant's *Motion for Summary Judgment* insofar as the Court failed to award penalties and attorney's fees arising from the non-authorization of the medically necessary surgery.

3.    The Trial Court abused its discretion i[n] awarding Claimant/Appellant's counsel only $2,000.00 in attorney's fees despite being successful on all issues.

4.    The Trial Court committed legal error in failing to award Claimant/Appellant cost reimbursement pursuant to La. R.S. 23:1310.9 and failing to award judicial interest on all penalties, costs, and attorney's fees awarded.

8

**OPINION**

Pursuant to La.R.S. 23:1203, an employer is required to furnish all necessary medical care, services, and treatment to an employee injured in the course and scope of employment. In *Matthews v. Louisiana Home Builder's Association Self Insurer's Fund*, 13-260, pp. 4-5 (La.App. 3 Cir. 3/12/14), 133 So.3d 1280, 1283-84, this court stated:

> Louisiana Revised Statutes 23:1203.1 was enacted by the legislature in 2009 to provide for the establishment of a medical treatment schedule, and such a schedule was promulgated by the Louisiana Workforce Commission, Office of Workers' Compensation Administration in June 2011. As a result, "medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule." La.R.S. 23:1203.1(I). Section 1203.1 establishes a procedure whereby an injured employee's medical provider can request authorization for medical services from a payor, usually the employer or its insurer, who must act on that request within five days. La.R.S. 23:1203.1(J)(1). Thereafter, any aggrieved party has fifteen days within which to file an appeal with the Medical Director who must render a decision within thirty days. *Id.* "After the issuance of the decision by the medical director . . ., any party who disagrees with the decision, may then appeal by filing a 'Disputed Claim for Compensation.' " La.R.S. 23:1203.1(K). A decision of the Medical Director "may be overturned when it is shown, by clear and convincing evidence, the decision . . . was not in accordance with the provisions of this Section." *Id.*; *See also Usie v. Lafayette Parish Sch. Sys.*, 13-294 (La.App. 3 Cir. 10/9/13), 123 So.3d 885

Accordingly, as pointed out by *Matthews*, medically necessary care, services, and treatment are those which conform to the medical treatment schedule. La.R.S. 23:1203.1(I).

*Assignment of Error Number One*

In his first assignment of error, Mr. Maynard argues that the WCJ legally erred by ordering an IME even though he was not at maximum medical improvement (MMI) and had not yet undergone the medically necessary surgery. We disagree.

The April 24, 2019 order appointing Dr. Butaud to perform an IME does not indicate whether the WCJ was relying on La.R.S. 23:1123 or La.R.S. 23:1124.1 in

9

ordering the IME. In the April 24, 2019 letter to Dr. Butaud, Sharon B. Francis, the Dispute Resolution Specialist for the Office of Workers' Compensation Administration, District 04, requested Dr. Butaud to examine Mr. Maynard in order to determine whether he was capable of returning to work. Dr. Butaud answered this question, finding that Mr. Maynard should not return to work pending further testing and evaluation. He further advised delaying the surgery until nerve testing pinpointed the exact location of his spine causing his pain. He also recommended a steroid injection into Mr. Maynard's right hip to ascertain if the shot afforded him any pain relief.

The Louisiana Workers' Compensation Law contains two statutes by which an injured employee may be required to undergo examination by an impartial physician. Louisiana Revised Statutes 23:1123 provides:

> If any dispute arises as to the condition of the employee, or the employee's capacity to work, the assistant secretary, upon application of any party, shall order an additional medical opinion regarding an examination of the employee to be made by a medical practitioner selected and appointed by the assistant secretary. The medical examiner shall report his conclusions from the examination to the assistant secretary and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.

Additionally, La.R.S. 23:1124.1 provides:

> Neither the claimant nor the respondent in hearing before the workers' compensation judge shall be permitted to introduce the testimony of more than two physicians where the evidence of any additional physician would be cumulative testimony. However, the workers' compensation judge, on his own motion, may order that any claimant appearing before it be examined by other physicians.

In *Dietz v. Lowe's Home Centers, Inc.*, 14-401 (La.App. 3 Cir. 11/5/14), 151 So.3d 990, *writ denied*, 15-130 (La. 4/10/15), 163 So.3d 812, the employer requested the appointment of an IME based on conflicting treatment recommendations made by its psychologist and the employee's treating psychiatrist. Over the employee's

10

objection, the WCJ appointed a psychiatrist to examine the employee. After the matter proceeded to a trial on the merits, the employee appealed, arguing that the WCJ lacked the authority to appoint an IME pursuant to La.R.S. 23:1124.1 because there was no dispute over his condition. In finding no merit to this argument, this court stated:

> The workers' compensation judge specifically rejected this argument, finding that: "I want to note that claimant's counsel has made a big issue of the fact that there was no dispute warranting the appointment of an IME. I appoint under 1[1]24.1, which doesn't have any language requiring a conflict of opinion or a dispute for the appointment. If I have questions, I am entitled to appoint the IME, and I did so in this case."
>
> As noted by the workers' compensation judge, La.R.S. 23:1124.1 does not contain language regarding a dispute. *But see* La.R.S. 23:1123 (which discusses an IME appointment following a dispute as to an employee's condition). However, in this case, the nature of, scope of, and appropriate treatment of Mr. Dietz's medical condition was in dispute. For instance, by the time the IME order was requested and entered, Dr. Blackburn had recommended psychiatric/psychological treatment whereas Dr. Frey recommended a more rehabilitative cognitive-based treatment to cope with pain. Accordingly, we find no error in the appointment of Dr. Ginzburg pursuant to La.R.S. 23:1124.1.

*Dietz*, 151 So.3d at 999 (alteration in original).

Therefore, we find that the WCJ did not legally err by ordering Mr. Maynard to submit to an examination by Dr. Butaud before he had either reached MMI or had undergone the surgery recommended by Dr. Sledge. Moreover, as pointed out in *Vanderberg v. Atlantic Southeast Airlines*, 02-383 (La.App. 3 Cir. 11/13/02), 831 So.2d 1067, La.R.S. 23:1317.1(F) lays out the procedure by which an employee may object to the WCJ's order that he or she submit to an IME within thirty days of receiving the order. Mr. Maynard failed to follow this procedure and, instead, submitted to Dr. Butaud's examination. Thus, we find that Mr. Maynard's objection at this late date is irrelevant. Accordingly, we find no merit in this assignment of error.

11

*Assignment of Error Number Two*

In his second assignment of error, Mr. Maynard argues that the WCJ legally erred in denying, in part, his motion for summary judgment on the issue of penalties and attorney fees despite the determination by Musson Patout's utilization review company that the requested surgery was medically necessary in accordance with the Medical Treatment Guidelines. However, we find that this issue has been rendered moot because the WCJ subsequently rendered judgment awarding penalties and attorney fees on this issue following the trial on the merits.

> "A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief." *United Cos. Lending Corp. v. Hall*, 97-2525, p. 4 (La.App. 1 Cir. 11/6/98), 722 So.2d 48, 50.
>
>> It is well established that appellate courts will not render advisory opinions from which no practical results can follow. *United Teachers of New Orleans v. Orleans Parish School Board*, 355 So.2d 899 (La.1978). As a result, Courts have established the rule that moot questions will not be considered on appeal. *State ex rel Guste v. Louisiana Commission*, 297 So.2d 750 (La.App. 1st Cir.1974). So strong is this prohibition that an appellate Court [sic], as a matter of judicial economy, has a right to consider the possibility of mootness on its own motion and to dismiss the appeal if the matter has become moot. *Aucoin v. Evangeline Parish Police Jury*, 338 So.2d 789 (La.App. 3rd Cir.1976); *Cain v. Board of Supervisors, Ouachita Parish*, 335 So.2d 711 (La.App. 2nd Cir.1976).

*Wood v. Fontenot*, 04-1174, pp. 3-4 (La.App. 3 Cir. 3/2/05), 896 So.2d 323, 325-26, *writ denied sub nom. City of New Iberia v. New Iberia Fire & Police Civil Serv. Bd.*, 05-801 (La. 5/13/05), 902 So.2d 1023.

Accordingly, we find that this assignment of error is moot.

*Assignment of Error Number Three*

In his third assignment of error, Mr. Maynard argues that the WCJ abused its discretion by only awarding him $2,000.00 in attorney fees despite him being successful on all issues before the WCJ. We agree.

12

At the start of his oral reasons, the WCJ noted that the issues before him were the amount of attorney fees owed to Mr. Maynard based on Musson Patout's miscalculation of his AWW and whether he was owed penalties and attorney fees based on its failure to approve the surgery recommended by Dr. Sledge. However, when the WCJ awarded Mr. Maynard $2,000.00 in attorney fees, he specifically stated that this amount only applied to Musson Patout's failure to approve the recommended surgery.

"Under La. R.S. 23:1201(J), only one award of attorney fees can be made in connection with a hearing on the merits, even when multiple violations have occurred." *Shelton v. Smitty's Supply, Inc.*, 17-1419, p. 20 (La.App. 1 Cir. (6/12/18), 253 So.3d 157, 171, *writs denied*, 18-1195, 18-1199 (La. 11/14/18), 256 So.3d 258, 291. Thus, while we find that the WCJ correctly awarded only one attorney fee, we find that the amount awarded, $2,000.00, was abusively low.

In *Ortega v. Cantu Services, Inc.*, 19-202, p. 10 (La.App. 3 Cir. 10/23/19), 283 So.3d 1024, 1032-33 (alteration in original), this court stated:

> "[A]ttorney's fee awards and penalty awards are not intended to 'compensate' a plaintiff and thereby make him whole, but rather to discourage certain behavior(s) on the part of the offending party. In this case, the discouraged behavior is employers', and employers' insurers', indifference toward injured employees." *Sharbono v. Steve Lang & Son Loggers*, 97-110, p. 10 (La. 7/1/97), 696 So.2d 1382, 1388, (quoting *Hood v. C.J. Rogers, Inc.*, 94-1162 (La.App.3 Cir. 3/8/95), 654 So.2d 371). It is equally clear "attorney's fee awards depend for their very existence upon a discretionary finding of the trier of fact[.]" *Id.*

> In *McCarroll v. Airport Shuttle, Inc.*, 00-1123, p. 9 (La. 11/28/00), 773 So.2d 694, 700, the supreme court held:

>> In our determination of the respective rights of the employee and the attorney to the statutory attorney fees, a persuasive factor is the methodology used to calculate the amount of the statutory attorney fees. The only limitation on the amount is the reasonableness of the fee awarded by the judge. *Cain [v. Employers Cas. Co.*, 236 La. 1085, 110 So.2d 108 (1959)]. The amount awarded rests within the discretion of the workers' compensation judge, as long

13

as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case. H. Alston Johnson, III, [Louisiana Civil Law Treatise: Workers' Compensation Law and Practice] § 389 [ (3rd ed.1994) ].

At the close of the trial, the following colloquy took place between the WCJ and both counsel on the attorney fee issue:

| WCJ: | So do we have any testimony about the average weekly wage calculation, or is it just going to basically be argument? |
|---|---|
| Musson Patout: | We handled that with the consent judgment. |
| WCJ: | Right. |
| Musson Patout: | So we have the calculation corrected, and we've paid the penalty associated with that. The only issue is the attorney's fees. |
| | However, Judge, very quickly, I mean, I'll just say this very quickly. Once [Mr. Maynard's counsel] got on the file and we were reviewing it, we got together very quickly and resolved the issue. So there wasn't a lot of ongoing litigation between the parties with regards to the average weekly wage issue. It was handled very relatively swiftly. |
| WCJ: | Okay. So I can determine the attorney's fees. Give me a timeline. Two weeks? Three weeks? |
| Musson Patout: | I would say two weeks to a month tops between – |
| Mr. Maynard: | That would be – |
| Musson Patout: | – the 1008 and the actual consent judgment. |
| Mr. Maynard: | The substantially greater amount of time, it's fair to say, has been spent arguing the surgery and penalties and attorney's fees associated with the nonauthorization. |
| WCJ: | Okay. All right. Anything else? |

Despite the absence of an affidavit by Mr. Maynard's counsel itemizing the work involved and the amount of time he spent prosecuting Mr. Maynard's claims pertaining to the miscalculation of his AWW and the failure to authorize the recommended surgery, a review of the record reveals that he undertook the following actions in this matter:

In Docket Number 18-08513:

(1) Filed a memorandum in opposition to Musson Patout's disputed claim and motion to appoint an IME; (2) Filed a motion to transfer venue to District 04, which was granted; (3) Filed a motion to set a telephone conference; (4) Participated in the hearing on Musson Patout's motion to appoint an IME; (5) Filed a motion for summary judgment; (6) Replied to Musson Patout's opposition to the motion for summary judgment; (7) Participated in the summary judgment hearing; (8) Participated in the trial on the merits; and (9) Appeared at the WCJ's oral ruling following the trial on the merits.

In Docket Number 19-00336:

(1) Filed a disputed claim for compensation, which alleged Musson Patout had incorrectly calculated Mr. Maynard's workers' compensation rate, failed to authorize the surgery recommended by Dr. Sledge, and issues pertaining to Mr. Maynard's disability status, penalties, attorney fees, reimbursement costs, and judicial interest; and (2) Negotiated a consent judgment, which found that Mr. Maynard was injured in the course and scope of his employment, that Musson Patout had miscalculated his workers' compensation rate and owed, as a result, a $2,000.00 penalty, and that future indemnity benefits would be governed by the Workers' Compensation Act.

Based on the foregoing, we find that the $2,000.00 in attorney fees awarded by the WCJ is abusively low. Thus, we find that the lowest reasonable amount of attorney fees that should be awarded in this matter is $5,000.00. Accordingly, the judgment of the WCJ is amended to award $5,000.00 in attorney fees to Mr. Maynard.

15

*Assignment of Error Number Four*

In his fourth assignment of error, Mr. Maynard argues that the WCJ erred by failing to award him cost reimbursement pursuant to La.R.S. 23:1310.9 and judicial interest on all penalties, costs, and attorney fees awarded at trial. We agree.

Louisiana Revised Statutes 23:1310.9 provides that all costs shall be assessed against the party whose denial of workers' compensation benefits was based on an unreasonable ground. In this instance, the WCJ found that Musson Patout acted inappropriately by relying on the SMO and the IME to deny authorization for the recommended surgery when the question of causation was not at issue and the surgery had already been approved by the Medical Director. Accordingly, we find that Musson Patout's denial of the surgery was unreasonable, and the WCJ should have assessed it with the total costs of this proceeding.

Further, the judgment failed to specifically provide for legal interest. A different panel of this court in *George v. Guillory*, 00-591, pp. 16-17 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1211, noted that legal interest attaches automatically by operation of law and stated as follows:

> The fact that a workers' compensation judge is silent as to legal interest in his judgment does not constitute denial of such interest; legal interest is mandatory under the workers' compensation statute. *Kortz v. Colt Energy Servs., Inc.*, 97-159 (La.App. 5 Cir. 7/29/97); 698 So.2d 460. Legal interest is due on penalties and attorney fees from the date of judgment in workers' compensation cases. *See McLaughlin v. Hill City Oil Co./Jubilee Exxon*, 97-577 (La.App. 3 Cir. 10/8/97); 702 So.2d 786, *writ denied*, 97-2797 (La. 2/13/98); 706 So.2d 994; *Sharbono v. Steve Lang & Son Loggers*, 97-110 (La. 7/1/97); 696 So.2d 1382. This interest automatically attaches until judgment is satisfied, whether prayed for in petition or mentioned in judgment. *See Crooks v. Town of Ball*, 94-466 (La.App. 3 Cir. 11/2/94); 649 So.2d 597.

Therefore, we amend the judgment to award legal interest to Mr. Maynard on all sums due and all costs of the proceedings.

### *Attorney Fees for Work Performed on Appeal*

Finally, Mr. Maynard requests that we award him attorney fees for the work necessitated by his appeal. Based on the fact that his counsel was successful in part on appeal, we award Mr. Maynard an additional $2,500.00 in attorney fees for the prosecution of this appeal.

### DECREE

For the foregoing reasons, the judgment of the WCJ is affirmed to amend the award of attorney fees awarded to Jimmy Maynard from $2,000.00 to $5,000.00 and to award him an additional $2,500.00 in attorney fees for work performed by his counsel on appeal. We further amend the judgment to explicitly include an award of legal interest on all penalties and attorney fees from the date of judgment until paid, and to assess Musson Patout Automotive Group with all costs of the proceeding before the WCJ. Costs of this appeal are to be divided equally between the parties.

**AFFIRMED AS AMENDED.**