# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-471


WALTER MCKAY

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF
HEALTH AND HUMAN SERVICES


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 19-07980
JAMES L. BRADDOCK, WORKERS COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, D. Kent Savoie, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Dorwan Gene Vizzier**
**Broussard, Halcomb & Vizzier**
**1254 Dorchester Drive**
**Alexandria, Louisiana 71301**
**(318) 487-4589**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Walter McKay**

**David E. Boraks**
**Assistant Attorney General**
**900 Murray Street, Suite B-100**
**Alexandria, Louisiana 71301**
**(318) 487-5944**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **State of Louisiana, through the Office of Behavioral Health Central**
    **Louisiana State Hospital**

**Jabrina C. Edwards**
**Assistant Attorney General**
**330 Marshall Street, Suite 777**
**Shreveport, Louisiana 71101**
**(318) 676-5700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **State of Louisiana, through the Office of Behavioral Health Central**
    **Louisiana State Hospital**

**SAVOIE, Judge.**

Defendant State of Louisiana, through the Office of Behavioral Health Central Louisiana State Hospital (the State) appeals the judgment of the Workers' Compensation Court (WCC), reversing the decision of the Medical Director of the Office of Workers' Compensation (Medical Director). The WCC granted Claimant Walter McKay's requested surgery and awarded him penalties and attorney's fees. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 26, 2018, Walter Mckay was working as a master plumber/pipe fitter for the State. He was attempting to clear a blockage using a power sewer machine when a burr on the cable caught his leather glove, twisting and severely injuring his left hand. Mr. McKay underwent amputation surgery of his left little finger and a partial amputation of his left ring finger on October 27, 2018. The surgery was performed by Dr. John McCabe, a cosmetic, plastic and reconstructive surgery specialist based in Alexandria, Louisiana. Following surgery, Dr. McCabe ordered physical therapy for Mr. McKay's hand.

Brooke Duplechain was selected as Mr. McKay's field case manager for his workers' compensation claim. She is employed by Genex, a company who performs services for the State with respect to the State's workers' compensation claims. Her initial appointment with Mr. McKay occurred at a post-operative appointment with Dr. McCabe. Mr. McKay indicated that he was still having pain in his left hand and requested to see a hand specialist. Ms. Duplechain made Mr. McKay an appointment with Dr. Gary Porubsky, an orthopedic hand surgery specialist in Opelousas, Louisiana.

Mr. McKay began treating with Dr. Porubsky on December 11, 2018, which was the date of his initial appointment. On August 22, 2019, Dr. Porubsky recommended surgery, arthrodesis of the left thumb carpometacarpal joint, and filed a "Request for Authorization" (Form 1010) requesting approval for the surgery, which was denied by the workers' compensation administrator Sedgwick. The Peer Review Report, authored by Dr. Andrew Farber and attached to the denial, notes that the surgery is not medically necessary. Specifically, the report stated:

> Per ODG guidelines, Arthrodesis is recommended for painful conditions including severe post-traumatic arthritis of the wrist, thumb, or digit following 6 months of conservative therapy. There was no documentation of attempted and failed conservative treatment. Thus, medical necessity has not been established. Therefore, the request for arthrodesis of the Left Thumb Carpometacarpal Joint is not medically necessary.

Dr. Porubsky then filed a Disputed Claim for Medical Treatment (Form 1009) with the Office of Workers' Compensation Medical Director, Dr. Jason Picard, who denied the surgery on November 20, 2019, noting "[t]he 1009 cannot be approved as the procedure is not anywhere in the guidelines." Mr. McKay then filed a Disputed Claim for Compensation (Form 1008) with the WCC on December 4, 2019.

After a trial on the merits held January 26, 2021, oral reasons were issued on March 17, 2021, and judgment rendered March 31, 2021, stating it is:

> ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, WALTER MCKAY and against defendants STATE OF LOUISIANA THROUGH OBH/CENTRAL LA STATE HOSPITAL, ordering that the medical director[']s ruling, on November 20, 2019, denying the requested surgery, arthrodesis of the left thumb carpometacarpal joint, be and is hereby reversed and the requested authority of Dr. Gary Porubsky to perform the arthrodesis of the left thumb carpometacarpal joint is hereby granted;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff, WALTER MCCKAY [sic], is awarded penalties in the amount of $2,000.00 and attorney's fees in the amount of $5,000.00, together with legal interest thereon from the date of judgment until paid in full.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, STATE OF LOUISIANA THORUGH OBH/CENTRAL LA STATE HOSPITAL, is ordered to pay all costs of these proceedings.

The State filed a Motion and Order for Suspensive Appeal on April 7, 2021, appealing the judgment of the WCC. Mr. McKay answered the appeal, requesting additional attorney's fees and costs for work done on appeal.

## ASSIGNMENTS OF ERROR

1. [The Workers' Compensation Judge (WCJ)] erred in reversing the Medical Director's decision, as the Claimant completely failed to produce clear and convincing evidence that the Medical Director's determination was in contravention of La. R.S. 23:1203.1.

2. [The WCJ] erred in [] assessing penalties and attorney's fees when it should have upheld that Medical Director's decision.

## LAW AND DISCUSSION

I.  *Assignment of Error Number One – Reversal of the Medical Director*

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784. In *Matthews v. Louisiana Home Builder's Ass'n Self-Insurer's Fund*, 13-1260, pp. 4-5 (La.App. 3 Cir. 3/12/14), 133 So.3d 1280, 1283-84, a panel of this court explained:

Louisiana Revised Statutes 23:1203.1 was enacted by the legislature in 2009 to provide for the establishment of a medical treatment schedule, and such a schedule was promulgated by the Louisiana Workforce Commission, Office of Workers' Compensation Administration in June 2011. As a result, "medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the

3

employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule." La.R.S. 23:1203.1(I). Section 1203.1 establishes a procedure whereby an injured employee's medical provider can request authorization for medical services from a payor, usually the employer or its insurer, who must act on that request within five days. La.R.S. 23:1203.1(J)(1). Thereafter, any aggrieved party has fifteen days within which to file an appeal with the Medical Director who must render a decision within thirty days. *Id.* "After the issuance of the decision by the medical director..., any party who disagrees with the decision, may then appeal by filing a 'Disputed Claim for Compensation.' " La.R.S. 23:1203.1(K). A decision of the Medical Director "may be overturned when it is shown, by clear and convincing evidence, the decision ... was not in accordance with the provisions of this Section." *Id.; See also Usie v. Lafayette Parish Sch. Sys.,* 13–294 (La.App. 3 Cir. 10/9/13), 123 So.3d 885.

The State argues that Mr. McKay failed to carry his burden, by clear and convincing evidence, that the Medical Director's ruling was not in compliance with the medical treatment guidelines. The Medical Director ruled that "[t]he 1009 cannot be approved as the procedure is not anywhere in the guidelines." While it is true that this type of surgery is not included in the Louisiana medical treatment guidelines, the Official Disability Guidelines (ODG) do contain this surgery. Louisiana Revised Statutes 23:1203.1 states, in pertinent part:

D. The medical treatment schedule shall be based on guidelines which shall meet all of the following criteria:

(1) Rely on specified, comprehensive, and ongoing systematic medical literature review.

(2) Contain published criteria for rating studies and for determining the overall strength of the medical evidence, including the size of the sample, whether the authors and researchers had any financial interest in the product or service being studied, the design of the study and identification of any bias, and the statistical significance of the study.

(3) Are current and the most recent version produced, which shall mean that documented evidence can be produced or verified that the guideline was developed, reviewed, or revised within the previous five years.

4

(4) Are interdisciplinary and address the frequency, duration, intensity, and appropriateness of treatment procedures and modalities for all disciplines commonly performing treatment of employment-related injuries and diseases.

(5) Are, by statute or rule, adopted by any other state regarding medical treatment for workers' compensation injuries, diseases, or conditions.

….

M. (1) With regard to all treatment not covered by the medical treatment schedule promulgated in accordance with this Section, all medical care, services, and treatment shall be in accordance with Subsection D of this Section.

In *White v. Fuel Plus, LLC*, 17-125, p. 10 (La.App. 3 Cir. 10/4/17), 229 So.3d 539, 546, this court concluded that "the ODG satisfies the criteria of La. R.S. 23:1203.1(D) and (M)(1)." As stated in Dr. Farber's Peer Review Report, arthrodesis of the left thumb carpometacarpal joint is contained in the ODG. Specifically, "[a]rthrodesis is recommended for painful conditions including severe post-traumatic arthritis of the wrist, thumb, or digit following 6 months of conservative therapy." Because there was no documentation of six months of conservative treatment attached to the request, Dr. Farber determined the surgery was not medically necessary.

The State's primary argument is the lack of medical evidence of conservative treatment for Mr. McKay's left thumb. The State maintains that while the record reflects treatment and therapy for the left hand, Mr. McKay did not explicitly complain about his left thumb during this time. The State asserts that Dr. Porubsky first learned of Mr. McKay's thumb complaints in August 2019.

The State directs the court's attention to Dr. Porubsky's August 22, 2019 medical note, wherein Dr. Porubsky determines that, after a review of his medical records, he cannot relate Mr. McKay's thumb discomfort to his work injury. In his

5

deposition, Dr. Porubsky clarified this position. In reviewing his medical notes, he misread the January 3, 2019 note, and did not see where Mr. McKay mentioned discomfort in the left thumb. Dr. Porubsky's deposition testimony was that this was "inaccurate" and that Mr. McKay did, in fact, complain of left thumb pain on January 3, 2019. When asked if he believes Mr. McKay's left thumb discomfort was caused by the accident, Dr. Porubsky responded that he has no reason to believe it was not caused by the workplace accident as Mr. McKay did not have left thumb pain prior.

Dr. Porubsky testified that he had provided Mr. McKay with conservative treatment since December 2018. He further determined that Mr. McKay would continue to have discomfort in his thumb unless he had arthrodesis of the left thumb carpometacarpal joint. Dr. Porubsky found the surgery to be medically necessary.

Additionally, Brooke Duplechain, Mr. McKay's field case manager, testified that Mr. McKay complained about his left thumb at their initial appointment at Dr. McCabe's office. Ms. Duplechain's attended all of Mr. McKay's examinations with Dr. Porubsky. She testified that Mr. McKay continuously and consistently complained to her about his thumb discomfort. She also testified that, while it may not have been every visit, Mr. McKay did complain to Dr. Porubsky about his thumb pain.

The State requested a second medical opinion regarding the necessity of surgery which was conducted on August 31, 2020, by Dr. Robby LeBlanc, an orthopedic hand surgeon located in Lafayette, Louisiana, August 31, 2020. Dr. LeBlanc agreed with Dr. Porubsky that Mr. McKay "could benefit from surgery to address the left thumb CMC joint pain." He further noted, "If [Mr. McKay] does

not wish to undergo surgery to address the pain at the tip of the left small finger, I would consider him at maximum medical improvement." While Dr. LeBlanc concluded the left thumb pain was unrelated to the workplace accident, he did so because, although Mr. McKay told him the pain began soon after the injury, there was no mention of thumb pain in the records until August 2019. This is incorrect, as Mr. McKay complained of left thumb pain to Dr. Porubsky on January 3, 2019, which is reflected in the medical notes from that visit. Further, according to Brooke Duplechain, Mr. McKay complained of left thumb pain from her initial visit with him shortly after the accident. In an August 20, 2019 email, Ms. Duplechain explained:

> Mr. McKay has always complained of thumb pain since I have gotten on this file, **but it was never really addressed because the focus was on the traumatic amputation and the weakness and the range of motion with the affected hand.**

Dr. LeBlanc was asked to conduct a follow-up examination, which occurred on September 21, 2020. He states:

> In my opinion, Mr. McKay would regain substantial functional improvement in his left thumb, but more importantly, this procedure would provide him with a significant reduction of pain at that level. If the surgery is performed and it is successful, I would expect a full recovery and return to work with no restrictions.

The decision of the Medical Director "may be overturned when it is shown, by clear and convincing evidence, the decision . . .was not in accordance with the provisions of this Section." La.R.S. 23:1203.1(K). The State contends that this case is analogous to *Matthews*, 133 So.3d 1280. In *Matthews*, the Medical Director denied the requested services "on the grounds that the documentation submitted with the request [did] not support the approval of the requested services per the Louisiana Medical Treatment Guidelines[.]" *Id.* at 1281. In the present

7

case, the Medical Director denied the request because "the procedure is not anywhere in the guidelines." As has been shown, the Official Disability Guidelines (ODG) do contain this surgery, and "the ODG satisfies the criteria of La. R.S. 23:1203.1(D) and (M)(1)." *White*, 229 at 546.

We affirm the WCJ's ruling to reverse the Medical Director's decision and grant Mr. McKay's requested surgery. The Medical Director's decision was clearly incorrect as the requested surgery is contained in the ODG, which satisfy the criteria of La.R.S. 23:1203.1. Further, based on the evidence presented, Mr. McKay complained about his left thumb pain to his nurse case manager from the outset and throughout the period in question. The left thumb complaint is noted in Dr. Porubsky's January 3, 2019 medical records. Mr. McKay received conservative treatment during this time, which extends past the six-month requirement. Dr. LeBlanc, who was requested by the State to perform a second opinion, agrees with Dr. Porubsky that the surgery would allow Mr. McKay to regain substantial functional improvement and a significant reduction in pain. Dr. LeBlanc expects Mr. McKay to fully recover and return to work with no restrictions, which is Mr. McKay's ultimate goal. For these reasons, we find that this assignment of error is without merit.

## II. *Assignment of Error Number Two – Penalties and Attorney's Fees*

The State also contends that the WCJ erred in awarding penalties and attorney's fees to Mr. McKay in this matter. "A WCJ's decision to cast an employer with penalties and attorney fees is a question of fact which will not be reversed on appeal absent manifest error." *Harris v. Twin City Elec., LLC*, 12-88, p. 5 (La.App. 3 Cir. 6/6/12), 92 So.3d 649, 653, *writ denied*, 12-1582 (La. 10/12/12), 98 So.3d 876).

In *Ortega v. Cantu Services, Inc.*, 19-202, p. 8 (La.App. 3 Cir. 10/23/19), 283 So.3d 1024, 1031, a panel of this court explained:

> Louisiana Revised Statutes 23:1201(F) provides for the assessment of penalties and attorney fees against an employer for failure to timely pay workers' compensation benefits. Penalties and attorney fees will not be assessed against an employer if the claim is reasonably controverted or nonpayment is due to circumstances beyond the employer's control. *Id.* To reasonably controvert a claim, an employer must be "engaged in a nonfrivolous legal dispute or [possess] factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas–LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. Further, any award of attorney fees must be reasonable. *Rapides Parish Waterworks Dist. No. 3 v. Broussard*, 95-361 (La.App. 3 Cir. 10/18/95), 663 So.2d 475, *writ denied*, 95-2777 (La. 1/26/96), 666 So.2d 679. Factors considered in determining whether an award is reasonable are the required skill, the complexity of the matter, and time expended on the case. *Id.*

The WCJ cites the Louisiana Supreme Court in *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 10 (La. 12/1/98), 721 So.2d 885, 890-91 for the proposition that "[i]f an employer or insurer reasonably controverts a claim and then becomes aware of information that makes his controversion of that claim unreasonable, he must then pay the benefits owed or be subject to penalties and attorney fees from that point forward." The supreme court concluded that while the defendants did not act egregiously, "the purpose of an imposition of penalties is to 'nudge the employer into making timely payments when there is no reasonable basis for refusing or delaying its obligation.'" *Id.* at 893 (quoting *Weber v. State,* 93-62, p. 8 (La.4/11/94), 635 So.2d 188, 193.

In the present matter, the WCJ found that while the State may have had a reasonable basis to deny the surgery when reports indicated that it was not related to the accident, this would have been cleared up when they received Ms.

Duplechain's email and after the deposition of Dr. Porubsky taken in January 2020. The WCJ determined that:

> [F]rom the time of that information all the way through January of 2021, they never authorized any surgery. They didn't authorize carpometacarpal arthrodesis, they didn't authorize arthroplasty, and they didn't authorize some type of suspension procedure discussed by Ms. Duplechain with Dr. Porubsky in some other piece of evidence and correspondence in the record.

Because of this, the WCJ ruled "that given their duty to thoroughly investigate this claim and the overlapping discrepancies and what was done on behalf of the State gathering and sorting out and categorizing this type of information was woefully inadequate. It was unreasonable[.]"

The State asserts that the WCJ erroneously reversed the Medical Director's findings, which they contend were justified. As discussed previously, we find that the WCJ was not manifestly erroneous in reversing the Medical Director's decision. Similarly, we cannot find that the WCJ was manifestly erroneous in awarding attorney's fees and costs. Dr. Porubsky misread his medical notes and based his conclusion that the thumb pain was not related to the accident on this incorrect knowledge. This was corrected by Dr. Porubsky in his January 2020 deposition. Further, the State was in possession of Ms. Duplechain's email that Mr. McKay complained about thumb pain since the beginning of his injury. She explained that it was not addressed because the focus of the medical team was on the "traumatic amputation and the weakness and the range of motion with the affected hand." Even the State's own selected doctor for the second medical opinion, Dr. LeBlanc, agrees that Mr. McKay needs the surgery. When the burr caught Mr. McKay's glove, his entire left hand was twisted so severely that he needed one finger fully amputated and another partially amputated. Mr. McKay

10

testified that he never had any thumb pain prior to the accident. His left thumb is part of the left hand that was so severely injured. Based on the evidence, we do not find that the WCJ was manifestly erroneous in awarding Mr. McKay penalties and attorney's fees. This assignment is without merit.

III.    *Answer to Appeal*

Mr. McKay requests attorney's fees for work done on appeal. We grant this request.

"Generally, when an award for attorney fees is granted at a lower court level, additional attorney fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

After a review of the record, we find that an award of four thousand dollars ($4,000.00) is reasonable.

**DECREE**

The judgment of the workers' compensation court is affirmed. Walter McKay is awarded $4,000.00 in attorney's fees for work done on appeal. Costs in the amount of $1058.00 are assessed to the State of Louisiana, through the Office of Behavioral Health Central Louisiana State Hospital.

**AFFIRMED.**

11