# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-48


**BRANDON BROUSSARD**

**VERSUS**

**STRUCTURAL PRESERVATION SYSTEMS, LLC**
**NEW HAMPSHIRE INSURANCE COMPANY**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 19-02126
MELISSA A. ST. MARY, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## WILBUR L. STILES
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.


**AFFIRMED IN PART; REVERSED IN PART.**

**Marcus M. Zimmerman**
**Attorney at Law**
**949 Ryan St., Suite 110**
**Lake Charles, LA 70601**
**(337) 474-1644**
**COUNSEL FOR CLAIMANT/APPELLEE:**
> **Brandon Broussard**

**Jeffrey C. Napolitano**
**Juge, Napolitano, Guilbeau, Ruli & Frieman**
**3320 West Esplanade Avenue North**
**Metairie, LA 70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> **Structural Preservation Systems, LLC**
> **New Hampshire Insurance Company**

**STILES, Judge.**

Structural Preservation Systems, LLC appeals the workers' compensation judge's reinstatement of indemnity benefits to its employee, Claimant Brandon Broussard, as it maintains that it terminated Mr. Broussard's employment for cause. Structural further questions the workers' compensation judge's award of an arthroscopic debridement of the right knee as recommended by Mr. Broussard's purported choice orthopedic surgeon. Structural finally challenges the workers' compensation judge's award of penalties and attorney fees due to a finding that it failed to reasonably controvert the claim for indemnity benefits and for the recommended surgery. For the following reasons, we affirm the award of indemnity benefits and the award of medical treatment but reverse the award of penalties and attorney fees.

## FACTS AND PROCEDURAL HISTORY

The underlying work-related accident occurred when Mr. Broussard injured his right knee while stepping down from scaffolding on Structural's construction site on September 26, 2018. Initially diagnosed with a possible right knee strain, Mr. Broussard was returned to his regular duties but was later placed on light duty by a family practitioner.

Structural accommodated Mr. Broussard's return to work, providing him with modified work in the office. Henry Leger, Structural's equipment manager, was assigned to "look out" for Mr. Broussard and "keep him busy" in the office. Assigned tasks initially included sweeping and "straightening" in the company's "shop." Mr. Broussard, however, complained that the work exacerbated his pain. Structural accordingly assigned Mr. Broussard to a seated position, counting inventory, such as nuts and bolts. The position allowed Mr. Broussard to elevate his leg as required.

Given Mr. Broussard's continued complaints of pain, an MRI was performed in October 2018, revealing characteristics of bone bruising.[1] Dr. Jonathan Foret, an orthopedic surgeon with whom Claimant began treating, determined that the bone bruising demonstrated on the MRI was consistent with a lateral patellar dislocation.[2] Dr. Foret explained that the MRI revealed no meniscal tear or intra articular loose body. Dr. Foret limited Mr. Broussard to sedentary work and treated Mr. Broussard's condition with conservative measures, including physical therapy, anti-inflammatory medication, and an intra-articular steroid injection.

Mr. Broussard continued to report persistent pain in his knee over the next several months. He further complained regarding his job assignments at Structural, maintaining that he was confined to token office work that left him idle and with no distraction. Structural asserted that Mr. Broussard's behavior became a disruptive element as he boasted to other employees that he was allowed to work in the office while they were not. Structural also cited Mr. Broussard's tardiness and absenteeism.

Friction ultimately arose between Mr. Broussard and his supervisors due to Mr. Broussard's continued use of his personal telephone during office hours. Mr. Leger explained that although he was initially lenient in Mr. Broussard's phone use in the office, he and Mr. Broussard's supervisors began to more strongly advise that Mr. Broussard leave his phone in his vehicle. Conversely, Mr. Broussard explained that he had been permitted to use his phone, but only with headphones.

In any event, the parties' conflict over phone use culminated in a verbal confrontation between Mr. Broussard and Structural's Project Manager, Phillip Burley. When Mr. Burley advised Mr. Broussard to leave his phone in the vehicle, Mr.

---

[1] The October 22, 2018 radiology report lists an impression of: "Bone marrow edema is present in the lateral femoral condyle consistent with bone bruising in this region."

[2] Dr. Foret explained in his deposition that a "pattern of bone bruising is typical and representative of a dislocation, meaning that the kneecap went out of place to the outside. The medial or inside part of the kneecap bangs into the outside part of the thigh bone and leaves sort of these kissing contusions in those parts. The kneecap comes back in place."

Broussard retorted that he would be left with nothing to do. After Mr. Burley advised Mr. Broussard to "watch his tone," Mr. Broussard responded that he would "have to get a lawyer for you not treating me right[.]" Mr. Broussard was sent home following the disruption.

Structural terminated Mr. Broussard's employment later that day, informing him by letter that: "This letter is to confirm that your employment with Structural Group has been terminated for cause due to insubordination and threatening behavior. Your last day of work will be today, January 17, 2019."

Mr. Broussard instituted this disputed claim against Structural and its insurer, New Hampshire Insurance Company (referred to collectively as "Structural"), in March 2019, asserting that he was "no longer accommodated" and that Structural had paid no wage benefits. Mr. Broussard sought wage benefits[3] as well as penalties, attorney fees, interest, and costs.

With litigation ongoing, Structural continued to provide for Mr. Broussard's medical care, including a second MRI in March 2019. Dr. Foret again found no evidence of a meniscal tear. He instead determined that the bone bruise had resolved and that Mr. Broussard's continued symptoms could be due to softening or irritation of the cartilage under the kneecap. Dr. Foret provided an intra-articular steroid injection at that time.

Dr. Foret explained in his deposition that when he last saw Mr. Broussard in April 2019, only Mr. Broussard's subjective complaints remained. Dr. Foret further stated that he was unclear why Mr. Broussard continued to have pain and that he found no basis for restrictions on Mr. Broussard's work. At the time of the last visit, Dr. Foret advised that a second opinion would be reasonable.

---

[3] Although Mr. Broussard initially sought indemnity benefits from the date of accident, the parties later stipulated that Mr. Broussard had no claim for benefits in the period before the termination of employment.

Structural approved the referral to Dr. Brett Cascio for "evaluation" alone. Dr. Cascio performed the exam in June 2019, noting a small effusion on exam[4] as well as tenderness to palpation over the medial and lateral joint line. Dr. Cascio reported Mr. Broussard to be "neurovascularly intact in the right lower extremity, all dermatomes and myotomes." Dr. Cascio discussed both operative and non-operative options, noting that he had discussed the possibility of an arthroscopic procedure with Mr. Broussard.

Although Structural earlier approved the referral for evaluation to Dr. Cascio, it denied Dr. Cascio's recommendation of arthroscopy. Following Dr. Cascio's evaluation, Dr. Foret did not further treat Mr. Broussard, with an inscription on records from his practice citing the referral to Dr. Cascio. Dr. Foret opined in his February 2020 deposition that arthroscopy was not indicated.[5]

Over a year later, in July 2020, Mr. Broussard sought treatment with Dr. Paul Fenn, an orthopedic surgeon and amended his disputed claim form at that time seeking designation of Dr. Fenn as his "choice of physician." Mr. Broussard sought associated penalties and attorney fees associated with the denial of his choice of physician.

Despite the denial, Mr. Broussard began treatment with Dr. Fenn that same month. Like Dr. Foret, Dr. Fenn concluded that Mr. Broussard's bone bruise had resolved. Dr. Fenn similarly found no evidence on the MRI of a meniscus tear. Given the failure of the conservative treatment, however, Dr. Fenn offered arthroscopic debridement of the right knee to address what he suspected was chondromalacia and potentially a meniscus tear. He explained that the surgery was, at least in part, diagnostic in nature.

---

[4] Dr. Cascio's medical file is included in the record but is slender, offering little insight due to Dr. Cascio's limited second opinion evaluation. While Dr. Cascio reported that Mr. Broussard had an "MRI done at Southwest Imaging," the medical file includes only the report from Mr. Broussard's initial, October 2018 MRI and does not indicate that Dr. Cascio reviewed Mr. Broussard's second, March 2019 MRI.

[5] Dr. Foret recognized that he indicated in a September 13, 2019 narrative report that he suggested to Mr. Broussard that diagnostic arthroscopy was a consideration. Dr. Foret stated in his deposition, however, that Mr. Broussard's "level and type of symptoms" kept him from ultimately offering the surgery to Mr. Broussard.

Structural denied the request for surgery, claiming that such arthroscopic debridement was not recommended under the Louisiana Medical Treatment Guidelines absent an earlier identified meniscal or cruciate pathology. The Office of Workers' Compensation twice denied appeals from Structural's refusal to approve the surgery. In February 2021, Mr. Broussard again amended his claim, seeking a reversal of the Office of Workers' Compensation's denial of the arthroscopic debridement as recommended by Dr. Fenn as well as associated penalties and attorney fees.

When the matter proceeded to an August 2022 hearing, the parties stipulated to Mr. Broussard's employment, his wages, and the occurrence of the work-related accident. The parties further stipulated that Structural had not paid indemnity benefits since the termination of employment but that it had paid medical expenses other than those arising from Dr. Fenn's treatment.

Structural maintained that its refusal to provide indemnity benefits was justified as it offered a suitable modified position paying at least ninety percent of Mr. Broussard's pre-accident wages and that it thereafter terminated his employment for cause. Structural continued to contend that it reasonably refused to provide for Dr. Fenn's treatment as it constituted Mr. Broussard's "third choice of orthopedic surgeon." Structural further cited its reliance on Dr. Foret's opinion for its refusal to provide the surgery offered by Dr. Fenn.

Although she did not offer reasons for ruling, the workers' compensation judge entered judgment in favor of Mr. Broussard, finding that Structural's termination of employment was not for cause and that Structural failed to rebut Mr. Broussard's evidence that he was unable to earn at least ninety percent of his pre-accident wages due to his work injury. The workers' compensation judge therefore awarded Supplemental Earnings Benefits (SEB) from the date of termination until Mr. Broussard is able to earn the requisite wages. The workers' compensation judge further granted Mr. Broussard's request that Dr. Fenn be considered his choice of physician in the field

5

of orthopedics. The workers' compensation judge found Mr. Broussard "entitled to receive the treatment recommended by Dr. Fenn, particularly the Right Knee Arthroscopy/Debridement/Synovectomy/Chondroplasty of the PFJ and Possible Lateral Retinacular Release, as well as any other treatment reasonable and necessary with regard to Claimant's work-related injuries."

Finally, the workers' compensation judge found Structural failed to reasonably controvert Claimant's claim for SEB and surgery, awarding $4,000 in penalties as well as attorney fees in the amount of $24,000.

Defendants appeal, assigning the following as error:

1) The trial court erred in overturning the decision of the OWC Medical Director and finding that the exploratory surgery suggested by Dr. Fenn met the criteria of the LA Medical Treatment Guidelines.

2) The trial court erred in allowing claimant a third choice of orthopedic surgeon without the consent of the employer, and without any testimony or evidence to support a change in treating physician.

3) The trial court erred in finding that appellant did not have good cause in terminating the employment of claimant.

4) The trial court erred in finding that claimant met his burden of proof that he had a disability resulting in a wage loss justifying an award of SEB.

5) The trial court erred in finding that appellant failed to reasonably controvert claimant's claim for SEB and surgery and awarding penalties and attorney fees.

Mr. Broussard answered the appeal, seeking additional attorney fees for work performed on appeal.

## DISCUSSION

*Louisiana Medical Treatment Guidelines*

Structural first questions the workers' compensation judge's award of the requested arthroscopic procedure and asserts that the decision was contrary to the Medical Treatment Guidelines as reflected by the Medical Director's denial of Mr.

6

Broussard's request for approval. Structural primarily maintains that the surgery as recommended is exploratory in nature and, therefore, unavailable under the Medical Treatment Guidelines absent certain conditions.

Louisiana Revised Statutes 23:1203 and 23:1203.1 provide the framework for the workers' compensation judge's consideration of the surgery request. The former section requires an employer to provide necessary medical care, services, and treatment to employees injured in a work-related accident whereas the latter section states "medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, service, and treatment in accordance with the medical treatment schedule." La.R.S. 23:1203.1(I).

After an injured employee's medical provider requests authorization for medical services, as did Dr. Fenn in this case, the payor must act on the request within five days. *See* La.R.S. 23:1203.1(J)(1). A party aggrieved by that action may then file an appeal with the Medical Director assigned by the Office of Workers' Compensation. *Id*. After the Medical Director issues a decision, a party disagreeing with that decision may bring the matter before a workers' compensation judge by filing a disputed claim for compensation. *See* La.R.S. 23:1203.1(K). The workers' compensation judge is authorized to overturn the Medical Director's decision "when it is shown, by clear and convincing evidence, the decision … was not in accordance with the provisions of [La.R.S. 23:1203.1]." La.R.S. 23:1203.1(K).

On review, an appellate court considers the workers' compensation judge's determination under the manifest error standard of review as the workers' compensation judge's inquiry is necessarily fact intensive. *Guidry v. Am. Legion Hosp.*, 14-1285 (La.App. 3 Cir. 4/1/15), 162 So.3d 728. An appellate court will therefore not overturn the finding of the workers' compensation judge unless there is no reasonable basis to support the decision. *Id.*

7

The Medical Director assigned to this matter twice denied the appeal of Structural's refusal to provide the arthroscopic debridement, first on February 8, 2021 and by a second decision of April 8, 2021. The decisions were largely similar with the latter report listing a decision that: "All records submitted were reviewed. The documentation submitted **does not** support the approval of the requested services in review for compliance with the Medical Treatment Guidelines." (Emphasis original). The Medical Director pointed out that "[T]here is no discussion of the amount of therapy attempted prior to the procedure as per the guidelines. There is no MRI included as per the guidelines."

Structural suggests that the Medical Director's decision "was the correct decision based upon what was (and was not) submitted to him" and cites *Matthews v. La. Home Builder's Ass'n Self Insurers Fund*, 13-1260 (La.App. 3 Cir. 3/12/14), 133 So.3d 1280 for the proposition that a claimant's failure to submit proper documentation to the Medical Director is proper grounds to deny the request. The workers' compensation judge in *Matthews*, however, denied the request to overturn the Medical Director's ruling. *Id.* In contrast, the workers' compensation judge in this case overturned the Medical Director's ruling upon consideration of the totality of the medical evidence presented at the workers' compensation hearing. Like the *Matthews* panel, we undertake a discretionary review of the workers' compensation judge's determination.[6]

Moreover, Structural points to neither positive nor jurisprudential law supporting its suggestion that a claimant is unable to present medical evidence *beyond* what a health care provider submitted to the Medical Director. We point out that La.R.S. 23:1203.1(K) informs a claimant that he or she may have a decision overturned upon

---

[6] Reference to *Matthews* further indicates that the parties, the Medical Director, and the workers' compensation judge were focused on the health care provider's repeated failure to supplement the request for diagnostic testing with appropriate documentation. In this case, neither party was focused on Dr. Fenn's submission to the Medical Director. Both Mr. Broussard and Structural were instead focused on their respective evidentiary offerings including Dr. Fenn's and Dr. Foret's depositions and treatment files.

showing "by clear and convincing evidence" that the Medical Director's decision "was not in accordance with the provisions of this Section." The statute does not limit either a claimant or a workers' compensation judge to the health care provider's submission to the Medical Director.

Reviewing the totality of the evidence, the workers' compensation judge in this case found error in the Medical Director's denial of the arthroscopic procedure. The workers' compensation judge instead found clear and convincing evidence in the medical documentation introduced at the hearing that Mr. Broussard "attempted therapy, which failed, and had two (2) MRIs performed, all of the which occurred prior to the first request for the Knee Surgery, and *all of which the Defendants were well aware*." (Emphasis added.) The workers' compensation judge thus found that Mr. Broussard "satisfied the requisites as required under the MTG for the requested Knee Surgery." Such reasoning, which recognizes the reality of Mr. Broussard's history and condition, prevents Structural from opportunistically relying on Dr. Fenn's inadequate submission to the Medical Director to the detriment of the claimant. Allowing it to rely on the artifice of the medical provider's submission, or lack thereof, would deprive Mr. Broussard of the ability to rebut the Medical Director's decision by the introduction of clear and convincing evidence. Structural's argument is thus at odds to the intent of both La.R.S. 23:1203 and the procedural review process of La.R.S. 23:1203.1.

In fact, Structural does not question that Mr. Broussard underwent multiple weeks of therapy or that MRIs were performed. Structural instead suggests that the Medical Treatment Guidelines requires that a "lesion" be identified prior to proceeding

with surgery. Titled "Chondral and Osteochondral Defects," La.Admin.Code tit. 40, §2309(A)(2)(d), provides for surgical intervention as follows:

> vi.    Surgical Indications/Considerations:  Surgery for isolated chondral defects may be indicated when functional deficits interfere with activities of daily living and/or job duties after 6 to 12 weeks of active patient participation in non-operative therapy. Identification of the lesion should have been accomplished by diagnostic testing procedures which describe the size of the lesion and stability of the joint. If a lesion is detached or has fluid underlying the bone on MRI, surgery may be necessary before a trial of conservative therapy is completed. Early surgery may consist of fixation and microfracture.

Structural argues to this court that the above guideline indicates that "[t]he only purpose for performing surgery is to correct a lesion that exists that is causing dysfunction or pain." It asserts that the guideline further makes it "clear that such lesion needs to be identified prior to proceeding with surgery" and that diagnostic testing must describe the size of the lesion and stability of the joint. Structural maintains that contrary to the guideline, the MRIs in this case did not identify a lesion.

Having reviewed both the guideline and the medical evidence submitted, we find no manifest error in the workers' compensation judge's determination that "Claimant has carried his burden of proving by clear and convincing evidence that the requested Knee Surgery is medically necessary." First, as a "guideline," La.Admin.Code tit. 40, §2309(A)(2)(d)(vi) does not definitively set forth prerequisites as suggested by Structural. It stops short of Structural's contention that a lesion must be identified. It instead more generally addresses when surgical intervention "may" be indicated and how identification of a lesion "should" have been accomplished.

Further, it is unquestioned that Mr. Broussard had observable injury from the work-related accident both as reported by Dr. Foret and as revealed by the MRIs performed in October 2018 and March 2019. Although no meniscal tear was observed, Mr. Broussard continued to complain of pain and failed to improve after months of physical therapy. The workers' compensation judge specifically remarked that she found his testimony "regarding his injury and current condition credible[.]"

While Dr. Foret found that Mr. Broussard's condition had resolved, Dr. Fenn testified that Dr. Foret's diagnosis of a right lateral patella dislocation was only the "acute" phase of the chondromalacia pathology that Dr. Fenn continued to treat well over two years after the accident. Dr. Fenn recognized that Mr. Broussard's MRIs were not "that impressive," but he explained that the MRI neither ruled in nor ruled out the possibility of a meniscal tear. Dr. Fenn described the MRI as just one of the many diagnostic tools available. He specifically remarked that medical history and physical exam were important in Mr. Broussard's case.

On exam, Dr. Fenn found tenderness, swelling, and crepitus in the front of the knee. Dr. Fenn stated that, like Dr. Foret, he would not have recommended surgery shortly after the injury. Dr. Fenn explained, however, that he was treating Mr. Broussard two years post-injury and that conservative care had failed to resolve Mr. Broussard's complaints. Presented with that background, Dr. Fenn felt that the recommended arthroscopic procedure would likely identify "synovitis scarring and, more probable than not, a meniscus tear."

The workers' compensation judge's consideration of Dr. Fenn's position, notwithstanding the "unremarkable" MRIs, is in keeping with the supreme court's pronouncement that medical necessity as expressed by La.R.S. 23:1203 is a foundational consideration and that La.R.S. 23:1203.1, along with its medical treatment schedule of preauthorized procedures act "as the guidepost for assessing whether the medical care required to be provided by La.R.S. 23:1203 is necessary." *Church Mut. Ins. Co. v. Dardar*, 13-2351, p. 19 (La. 5/7/14), 145 So.3d 271, 284. Louisiana Revised Statutes 23:1203.1 and the medical treatment schedule do not exclude any particular medical care but "create rebuttable presumptions as to the necessary treatment required by La.R.S. 23:1203(A)." *Id.* at 284-85. *See also McCain v. Motel 6*, 19-653 (La.App. 3 Cir. 3/4/20), 297 So.3d 136, *writ denied*, 20-764 (La. 10/6/20), 302 So.3d 535; *Ardoin*

*v. Calcasieu Par. Sch. Bd.*, 15-814 (La.App. 3 Cir. 2/3/16), 184 So.3d 896, *writ denied*, 16-641 (La. 5/27/16), 192 So.3d 738.

In addition to Dr. Fenn's recommendation of the arthroscopic procedure, it is noteworthy that following Mr. Broussard's evaluation with Dr. Cascio in June 2019, Dr. Foret did not see Mr. Broussard again. However, a subsequent narrative report completed by Dr. Foret on September 13, 2019 indicates that: "As of my last visit on April 24, 2019 his only symptom that was an objective finding that would support a diagnosis of a meniscus tear was tenderness around medical aspect of his joint." Dr. Foret explained in the report that, although he did not see evidence of a meniscal tear on either of his MRI scans, Mr. Broussard "does have some documented symptoms of pain on the medial aspect of the knee that could be consistent with a meniscal tear." Dr. Foret thus suggested that, "[a]t this time I would recommend he undergo a diagnostic arthroscopy of his knee if he is having persistent symptoms and if at that time a meniscal tear or other pathology could be addressed." As discussed below, Dr. Foret discounted the potential benefit of an arthroscopic procedure during his deposition. Nonetheless, it was a view available for the workers' compensation judge's consideration.

In the least, the medical evidence indicates that Dr. Cascio, Dr. Fenn, and even at one point Dr. Foret, advised that the arthroscopic procedure sought by Mr. Broussard was warranted given his continued complaints of pain. The workers' compensation judge specifically accepted those complaints as credible. Accordingly, we find no manifest error in the workers' compensation judge's determination that Mr. Broussard demonstrated, by clear and convincing evidence, that the Office of Workers' Compensation Medical Director's denial of the arthroscopic procedure was not consistent with La.R.S. 23:1203.1. *See also* La.R.S. 23:1203.

*Choice of Orthopedic Surgeon*

Structural next asserts that the workers' compensation judge erred in recognizing Dr. Fenn as Mr. Broussard's choice of physician in the field of orthopedics. Structural

12

points out that Mr. Broussard first saw Dr. Foret as his choice of orthopedic surgeon and argues that Mr. Broussard later selected Dr. Cascio as his second choice of orthopedic surgeon. Structural thus contends that Dr. Fenn could only be considered as Mr. Broussard's third choice of orthopedic surgeon. Such a selection, Structural maintains, contravenes La.R.S. 23:1121(B)(1), which provides that an "employee shall have the right to select one treating physician in any field or specialty . . . . After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within the same field or specialty."

Following review, we find that the record supports the workers' compensation judge's ruling. It is undisputed that Mr. Broussard chose Dr. Foret as his choice of physician in orthopedic surgery. Contrary to Structural's position, Dr. Cascio was not Mr. Broussard's second choice of orthopedic surgeon. Rather, Structural's insurance adjuster approved the referral to Dr. Cascio for "Evaluation Only." The record contains no indication that Mr. Broussard saw Dr. Cascio beyond that single evaluation. Moreover, following the referral to Dr. Cascio, Dr. Foret did not see Mr. Broussard again. Dr. Foret instead explained in his deposition that he had nothing left to offer Mr. Broussard. The record thus supports the view that Mr. Broussard was left without a choice of orthopedic surgeon.[7] Only after that time did Mr. Broussard seek treatment with Dr. Fenn, most notably seeking treatment by Dr. Fenn by amendment of his

[7] Plaintiff's Exhibit 8 is comprised of selected records from Dr. Foret's practice at Imperial Health Center for Orthopaedics and indicates that, at one time, Structural asked Dr. Foret to perform the arthroscopic procedure which it ultimately denied following Dr. Fenn's request.

The exhibit includes defense counsel's October 3, 2019 correspondence to Dr. Foret noting it had approved Dr. Foret's recommendation of a second medical opinion, performed by Dr. Cascio. Structural's counsel remarked that, subsequent to Dr. Cascio's examination, "in your 9/16/2019 report, you recommended that Mr. Broussard undergo an arthroscopic examination to determine if the MRI scans missed the existence of any torn meniscus or other pathology. My client has approved this recommendation also". Given his status as treating physician, Structural asked Dr. Foret to perform the "scope, along with any procedure you see fit, depending upon what is revealed during the scope." However, a handwritten inscription atop the correspondence in Dr. Foret's file indicates "Not taking case Pt was referred to Dr. Cascio." Structural made no comment at the hearing regarding the notation on the corrospondence nor does it refer to that notation in its brief to this court.

disputed claim for compensation on July 10, 2020. In its answer to the amendment, Structural responded that "plaintiff already exercised his choice of physician and is not entitled to a new choice."

In light of this series of events, we find no merit in Structural's characterization of Dr. Fenn as Mr. Broussard's "third choice of orthopedic surgeon." We leave the workers' compensation judge's ruling regarding choice of physician undisturbed.

*Indemnity Benefits*

In its third and fourth assignments of error, Structural addresses the workers' compensation judge's order that it reinstate SEB from the date of termination. Structural instead asserts that it terminated Mr. Broussard's employment for cause and, it further insists, that no objective medical evidence supports the finding of a disability.

Termination for Cause

Structural first asserts that, although it accommodated Mr. Broussard's need for modified duty employment, Mr. Broussard complained of those tasks and further became disruptive and disrespectful in the workplace. Structural maintains that throughout four months of modified work, Mr. Broussard cited his pain in taking advantage of the employer and that he failed to abide by workplace hours and flouted his ability to work in with office to fellow employees. His conduct, Structural maintains, negatively affected workplace morale. As set forth above, the culminating event before Structural terminated Mr. Broussard's employment was a verbal exchange between Mr. Broussard and Mr. Burley regarding Mr. Broussard's use of his personal phone during work hours. Structural contends that Mr. Broussard became defiant and argumentative

during the exchange, crossing the line into insubordination and giving it no alternative to termination of employment.[8]

Structural notes that this court has previously explained that "it is a claimant's refusal to accept employment that fits within his abilities and/or disabilities which is made available to him that precludes an award of SEBs." *Palmer v. Schooner Petroleum Servs.*, 02-397, p. 12 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, 650, *writ denied*, 03-367 (La. 4/21/03), 841 So.2d 802. A claimant is similarly precluded from receiving SEB if an employer provides suitable modified employment but later terminates a claimant's employment due to insubordinate behavior. *See, e.g.*, *Synigal v. Vanguard Car Rental*, 06-761 (La.App. 5 Cir. 1/30/07), 951 So.2d 1197.

It is clear both that Structural attempted to accommodate Mr. Broussard's return to work and that Mr. Broussard attempted to perform those tasks, at least to some extent. The workers' compensation judge's ruling demonstrates a finding in favor of Mr. Broussard's testimony regarding his inability to perform the tasks due to pain, swelling, and the need to elevate his leg at times. The workers' compensation judge specifically found "Claimant's testimony regarding his injury and current condition credible[.]" Further, all who testified agreed that Mr. Broussard's condition and the limitations of the construction company's work environment left Mr. Broussard without meaningful work at times. At other times, he was simply left idle in the office. It was in that charged atmosphere that Mr. Broussard and Mr. Burley were involved in the verbal dispute leading to the termination of employment.

---

[8] Structural's personnel file commemorates the January 17, 2019 encounter as follows:

January 17, 2019 – was told that he was no longer able to use his phone in the shop. He barked back "What do you want me to do for 8 hrs. a day." We then reminded him politely that we asked him to do multiple tasks when he claimed it bothered his knee even more (including counting screws). He then was rude and disrespectful to Henry and Philip and began questioning their religious belief and told they were no longer to talk to him that we needed to talk to his Lawyer. He was then asked to leave the shop due to threatening[.]

While Structural characterizes Mr. Broussard's behavior as defiant and, ultimately, insubordinate, Mr. Broussard testified that it was Mr. Burley who had "threatened him," although he conceded that he could not recall the "exact words." Mr. Broussard explained that the exchange occurred even though he felt that he was complying with the employer's requests. Given the workers' compensation judge's preferred position in assessing credibility, we find that the record supports the rejection of Structural's suggestion that employment was appropriately terminated for cause. Instead, the workers' compensation judge was provided with sufficient evidence that Mr. Broussard attempted to perform the limited tasks assigned him and otherwise tried, within reason, to comply with Structural's demands.

Objective Medical Evidence

In its fourth assignment of error, Structural argues that the workers' compensation judge erred in awarding indemnity benefits as Dr. Foret, who Structural characterizes as the treating physician, found no medical basis for restricting Mr. Broussard's return to work. In support, Structural cites jurisprudence for the proposition that objective evidence of injury is required for a finding of disability, not merely subjective complaints of pain. *Citing Fassitt v. Jefferson Par. Hosp. Serv.*, 07-695 (La.App. 5 Cir. 12/27/07), 974 So.2d 757; *Babin v. Lafayette Par. Sch. Bd.*, 534 So.2d 124 (La.App. 3 Cir. 1988).

Above, however, we have maintained the workers' compensation judge's determination that Dr. Fenn, not Dr. Foret, must be considered as Mr. Broussard's choice of orthopedic surgeon. Further, Dr. Fenn testified in his deposition that, although the MRI reports did not reveal a meniscal tear, physical exam revealed that Mr. Broussard continued to display positive, objective signs of injury on physical exam, i.e., crepitus, inflammation, and tenderness to palpation. Dr. Fenn explained that Mr. Broussard's symptoms are consistent with the pathology of the knee problems that he

suspects he will discover in the arthroscopic procedure. Dr. Fenn reasoned that Mr. Broussard's return to sedentary work would be reasonable.

Given Dr. Fenn's position as the treating physician, along with his findings on physical exam, we find no merit in Structural's position that Mr. Broussard failed to establish a disability by sufficient medical evidence.

*Penalties and Attorney Fees – Failure to Reasonably Controvert*

In its final assignment of error, Structural questions the workers' compensation judge's assessment of penalties and attorney fees, maintaining that it had several bases to reasonably controvert both the claim for continued indemnity benefits and the necessity of Dr. Fenn's treatment.

The supreme court has explained that the purpose of penalties and attorney fees, which are penal in nature, is to discourage an employer's indifference. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181. "The crucial inquiry in determining whether to impose penalties and attorney fees on an employer is whether the employer had an articulable and objective reason to deny benefits at the time it took action." *Id.* at 1188 (citing *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41).

Notably, the workers' compensation judge offered no articulation of the reasons for its award of penalties and attorney fees. The judgment instead merely indicated that "Claimant is entitled to penalties and attorney fees for Defendants' failure to reasonably controvert Claimant's claim for SEB" and the claim for the arthroscopic procedure. Despite this failure to provide a basis for the award, we review the underlying factual determination of whether penalties and attorney fees should be assessed under the manifest error standard of review. *Id.*

Mindful of that standard, we find that the record demonstrates that Structural articulated an objective reason for refusing to provide indemnity benefits after its termination of Mr. Broussard's employment. We above affirm the award of indemnity

17

benefits. We point out, however, that the parties' accounts of Mr. Broussard's attempts to work in the modified position and his attitude in responding to his superiors' requirements differ only in a slight, subjective sense. Both Structural and Mr. Broussard concede that there were times when Mr. Broussard was left without meaningful work to fill the workday, causing frustrations to all concerned. Only in the final days did Mr. Broussard's use of his personal cell phone become the flashpoint for his heated exchange with Mr. Burley. The fact of the occurrence is unquestioned. Structural viewed Mr. Broussard as disrespectful in his behavior whereas Mr. Broussard found Mr. Burley's demands were threatening in nature and inappropriate. Structural's version of events cannot be construed as unreasonable given the obvious disfunction of the work environment. We conclude that this type of minimal difference of perception renders penalties and attorney fees inappropriate in this case. *See J.E. Merit Constructors, Inc. v. Hickman*, 00-0943 (La. 1/17/01), 776 So.2d 435; *Quave v. Airtrol, Inc.*, 11-1182 (La.App. 1 Cir. 6/8/12), 93 So.3d 733.

Neither do we find that Structural acted unreasonably in denying the surgery recommended by Dr. Fenn. First, Mr. Broussard did not begin to treat with Dr. Fenn until July 2020, more than a year and half after the termination of Mr. Broussard's employment and well over a year after Mr. Broussard's last visit to Dr. Foret. Both doctors came to similar conclusions based on the examination and MRI evidence, i.e., no objective evidence from the diagnostic testing to indicate that an exploratory surgery would prove effective. Dr. Fenn only departed from Dr. Foret's recommendations to the extent that he found that an arthroscopic procedure would likely reveal further injury that could be addressed. Further, Structural was aware that the Office of Workers' Compensation Medical Director twice denied the requested procedure. Thus, while we have maintained the determination that the arthroscopic procedure has been proven to be medically necessary in following this proceeding, we find that Structural had an articulable and objective basis for its denial thereof.

18

Accordingly, by decree below, we reverse the judgment to the penalties and attorney fees for the failure to reasonably controvert Mr. Broussard's claims for both indemnity benefits and the arthroscopic procedure.

*Answer to the Appeal*

The above reversal of the trial court's award for penalties and attorney fees pretermits consideration of Mr. Broussard's request for additional attorney fees for work performed in defense of this appeal.

## DECREE

For the foregoing reasons, the workers' compensation judge's November 1, 2022 ruling is affirmed in the awards of indemnity and medical treatment. The ruling is reversed to the extent it cast Defendants/Appellants Structural Preservation Group, Inc. and New Hampshire Insurance Company in judgment for $4,000 in penalties and $24,000 in attorney fees. Costs of this proceeding are assessed equally between Claimant/Appellee Brandon Broussard and Defendants/Appellants Structural Preservation Group, Inc. and New Hampshire Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART.**

19